UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CATHERINE BURT, | ) | CASE NO. C07-1888-RSM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY |
| MICHAEL J. ASTRUE, | ) | DISABILITY APPEAL |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Catherine Lynne Burt proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance (DI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, and finding oral argument unnecessary, the Court recommends that this matter be REMANDED for further administrative proceedings.

/ / /

/ / /

REPORT AND RECOMMENDATION RE
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1966.[1] She has a high school education, with special education classes, and previously worked as a cook and janitor. (AR 84, 87.)

Plaintiff received disability benefits for a closed period of time, from October 6, 1999 to October 31, 2001, after which she was deemed to have experienced medical improvement. (AR 26-37.) She did not appeal that decision.

Plaintiff's current claim relates to applications for DI and SSI benefits filed on September 23, 2003, alleging disability beginning September 4, 2003. (AR 62-64, 301-02.) Her applications were denied at the initial level and on reconsideration, and she timely requested a hearing.

On March 10, 2006, ALJ Verrell Dethloff held a hearing, taking testimony from plaintiff. (AR 316-30.) On June 14, 2006, the ALJ issued a decision finding plaintiff not disabled. (AR 16-25.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on September 26, 2007 (AR 6-9), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's obesity, knee arthritis, status post bilateral replacement, rheumatoid arthritis (controlled), and Raynaud's syndrome severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ assessed, for the period prior to October 2005, the following RFC: lift and carry up to ten pounds; stand and walk up to two hours in an eight-hour day; sit for six hours in an eight-hour day; unlimited push and pull with lower extremities up to ten pounds; only occasional climbing of ramps and stairs; never climbing ladders and ropes; occasional stooping, kneeling, crouching, and crawling; limitation on constant, repetitive use of both upper extremities for overhead reaching; and avoidance of cold environments due to numbing effects on fingers. For the period after October 2005, with short periods of time for recovery from knee replacement operations not exceeding two to three months, the ALJ assessed plaintiff's RFC as follows: lift and carry twenty pounds occasionally and ten pounds frequently; walk and stand up to six hours in an eight-hour day, with appropriate change of position, sit for six hours in an eight-hour day; unlimited push and pull with lower extremities up to twenty pounds; only occasional climbing of ramps and stairs; never climbing ladders and

ropes; occasional stooping, kneeling, crouching, and crawling; limitation on constant, repetitive use of both upper extremities for overhead reaching; and avoidance of cold environments due to numbing effects on fingers. The ALJ concluded plaintiff retained the RFC to perform sedentary work at all times from the date of alleged onset and, after October 2005, with inclusion of short recovery time periods following surgeries, able to perform work at the light level. With these RFC assessments, the ALJ found plaintiff unable to perform her past relevant work as a cook or janitor.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Using the Medical-Vocational Guidelines as a framework, the ALJ found plaintiff not disabled at step five.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erred in his evaluation of her carpal tunnel syndrome and his assessment of various physicians' opinions as to manipulative limitations. Plaintiff also argues that the ALJ erred in deeming her rheumatoid arthritis controlled and in reaching his conclusion at step five. She requests remand for a new hearing with the assistance of a vocational expert. Plaintiff

01 also requests oral argument. The Commissioner argues that the ALJ's decision is supported by

02 substantial evidence and should be affirmed. For the reasons described below, the Court

03 recommends remand for further administrative proceedings.

<u>Carpal Tunnel Syndrome and Manipulative Limitations</u>

05 Plaintiff raises related arguments on the issue of the ALJ's step two finding as to carpal

06 tunnel syndrome and the assessment of various physicians' opinions as to her manipulative

07 limitations. Those arguments, therefore, are addressed together below.

08 At step two, a claimant must make a threshold showing that her medically determinable

09 impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*,

10 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities"

11 refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b),

12 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the

13 evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's

14 ability to work.'" *Smolen v. Chater*, 80 F.3d 1273,1290 (9th Cir. 1996) (quoting Social Security

15 Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of

16 groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider

17 the "combined effect" of an individual's impairments in considering severity. *Id*.

18 In general, more weight should be given to the opinion of a treating physician than to a

19 non-treating physician, and more weight to the opinion of an examining physician than to a non-

20 examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted

21 by another physician, a treating or examining physician's opinion may be rejected only for "'clear

22 and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Also, the Commissioner must consider the opinions of State agency medical and psychological consultants as opinions of nonexamining physicians and psychologists. SSR 96-6p ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, [ALJs and the Appeals Council must] consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. [While not bound by them,] they may not ignore these opinions and must explain the weight given to the opinions in their decisions.")

Plaintiff first argues that the ALJ erred in failing to find her history of carpal tunnel syndrome severe. The ALJ stated the following with respect to this condition:

> The claimant reported that she has had carpal tunnel syndrome release surgery bilaterally in the past, but there are no definitive medical records to document this. Dr. Quint noted surgical scars in both wrists and the claimant said that she had the carpal tunnel release in both hands. She did not, however, complain of this as an impairment in her interview with Dr. Quint, nor does it form a significant part of her later complaints. To the extent that it may have some effect on her grip strength and lifting ability, it has been taken into account as part of the determination that she can do sedentary to light work only.

(AR 21.)

Plaintiff states that non-examining State agency medical consultants Drs. Alnoor Virji and Alfred Dickson found that she should avoid constant, repetitive handling and fingering actions due to her prior carpal tunnel release. (AR 146, 152.) She notes that the prior ALJ decision found her carpal tunnel syndrome severe and reflected her bilateral carpal tunnel releases in January and

February 2000. (AR 31.) Citing *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), and Acquiescence Ruling (AR) 97-4(9), plaintiff maintains that the ALJ was required to adopt the prior ALJ's finding absent new and material evidence related to the finding. Plaintiff also argues that the ALJ does not render any error at step two harmless by accounting for associated limitations in the RFC assessment, pointing to the absence of any limitation on constant, repetitive handling.[2]

      Plaintiff also specifically challenges the ALJ's assessments of opinions as to manipulative limitations by Drs. Virji and Dickson and by examining physician Dr. Howard Quint. She asserts that the ALJ erred in failing to give any reason for rejecting Dr. Quint's opinion that she "has occasional manipulative limitations because of swelling and discomfort in her fingers from arthritis which could make it difficult for her to carry heavy objects or do fine manipulation." (AR 143.) She asserts error in the ALJ's failure to consider the opinions of Dr. Virji and Dickson that she is limited in her ability to reach, handle, and finger, and should avoid constant, repetitive handling and fingering. (AR 152, 146.) Plaintiff avers that, if the opinions of these physicians are credited, remand is required to obtain vocational expert testimony. *See* SSR 83-10 ("Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."); SSR 96-9p (stating same and that: "Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the

---

[2] Plaintiff also initially argued that the ALJ erred in failing to find her left shoulder impairment severe and in failing to clearly explain why he nonetheless found limitations due to a shoulder impairment in his decision. (*See* Dkt. 12 at 15.) However, in response to the Commissioner's argument that the ALJ's inclusion of limitations to account for the shoulder impairment rendered any omission at step two harmless, *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007), plaintiff conceded this argument.

REPORT AND RECOMMENDATION RE
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

unskilled sedentary occupational base.") (emphasis in original); *Widmark v. Barnhart*, 454 F.3d 1063, 1069-70 (9th Cir. 2006) (remanding for further proceedings where ALJ improperly rejected opinion as to limitation of fine manipulation and, therefore, improperly used the Medical-Vocational Guidelines at step five).

In response to plaintiff's step two argument, the Commissioner distinguishes *Chavez* and AR 97-4(9). In *Chavez*, the Ninth Circuit found a presumption of continuing nondisability to exist from an earlier ALJ decision that a plaintiff in a later claim must overcome by proving "'changed circumstances' indicating a greater disability." 844 F.2d at 693-94. The Court further found that, where the claimant rebuts the presumption, the first ALJ's findings as to RFC, education, and work experience must be given some res judicata consideration in the later ALJ decision absent new, material evidence as to those findings. *Id*. AR 97-4(9) applied *Chavez* to Ninth Circuit cases and, where a claimant rebuts the presumption of continuing nondisability, its res judicata holding to a prior ALJ's findings as to RFC, education, work experience, or other finding required at a step in the sequential evaluation process.

The Commissioner notes that the ALJ in this case acknowledged the possible effect of carpal tunnel syndrome on plaintiff's grip strength and lifting ability, but found this taken into account by the determination that plaintiff could perform only sedentary to light work. The Commissioner also notes the ALJ's finding that plaintiff must avoid cold environments due to numbing effects on her fingers. He asserts an absence of cited authority that any occasional manipulative limitations would significantly erode the occupational base such that they would need to be included in the RFC assessment. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need only explain why significant probative evidence has been rejected).

REPORT AND RECOMMENDATION RE
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01       The Commissioner also responds to plaintiff's arguments regarding the physicians'
02 opinions. He asserts that Dr. Quint's consultative examination was done for the express purpose
03 of assessing limitations arising due to bilateral shoulder and knee pain, that Dr. Quint assessed
04 plaintiff as able to perform full time light work, and that Dr. Quint merely speculated as to
05 occasional manipulative limitations. (AR 138-43.) The Commissioner notes that Drs. Virji and
06 Dickson found plaintiff capable of full time sedentary work with only minor manipulative
07 limitations, specifically that plaintiff should avoid constant, repetitive handling and fingering. (AR
08 144-55.) The Commissioner also points to the opinions of examining physician Dr. Edwin Stickle
09 who, in December 2005, noted, *inter alia*, plaintiff's history of arthralgias in her peripheral joints,
10 "increasing discomfort in the wrist", "aching in both shoulders", and severe Raynaud's
11 phenomenon in the fingers. (AR 242.) ( *See also* AR 21 (ALJ's description of Dr. Stickle's
12 December 2005 findings).)

13       *Chavez* and AR 97-4(9) are not on point. Moreover, even if they applied, it cannot be said
14 that plaintiff has demonstrated any changed circumstances with respect to her carpal tunnel. Also,
15 the ALJ on the whole adequately explained his decision to not deem plaintiff's carpal tunnel
16 severe. However, the undersigned is nonetheless concerned with the ALJ's findings regarding any
17 limitations on plaintiff's handling and fingering abilities, particularly as the arguments relate to the
18 physicians' opinions and the ALJ's RFC assessment.

19       The ALJ directly acknowledged Dr. Quint's finding as to occasional manipulative
20 limitations and indirectly acknowledged handling limitations assessed by Drs. Virji and Dickson.
21 (*See* AR 20 (citing Dr. Quint's findings) and AR 22 (stating that the sedentary rating assessed by
22 Drs. Virji and Dickson "with the stated lifting and handling limitations, . . . took into account her

knee arthritis augmented by her obesity, and were additionally based on arthritis in the hands and the periodic numbness from Raynaud's phenomenon in the fingers."))[3] He did not reject these assessed limitations and instead stated that any carpal tunnel effect on plaintiff's grip strength and lifting ability was accounted for in the determination that she could perform only sedentary to light work, and that the sedentary rating by Drs. Virji and Dickson incorporated lifting and handling limitations. (AR 21, 22.) To the extent the ALJ included adequate limitations at step four, any error regarding plaintiff's carpal tunnel syndrome at step two could be deemed harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Likewise, inclusion of appropriate limitations at step four would support the adequacy of the ALJ's assessment of the physicians' opinions. The question, therefore, is whether a limitation to sedentary to light work accommodates limitations associated with plaintiff's hands and fingers.

The ALJ's RFC assessment limits plaintiff from constant, repetitive use of her upper extremities for overhead reaching, as well as avoidance of cold environments due to numbing effects on her fingers. (AR 22.) There is no broader limitation on constant, repetitive handling and fingering actions, or requiring only occasional manipulative limitations.

The Commissioner asserts the insignificance of the limitations in question. However, he does not provide direct support for the proposition that sedentary and light work would account

---

[3] There is some confusion as to Dr. Virji's and Dr. Dickson's specific findings as to manipulative limitations. Both physicians, in the narrative portion of their reports, specifically state that plaintiff "should avoid constant, repetitive handling and fingering actions due to prior carpal tunnel release." (AR 146, 152.) However, in the checkbox portion of the forms, Dr. Virji includes these limitations in the "frequent" category, while Dr. Dickson includes the limitations in the "constant" category. (*Id.*) This distinction may simply be a matter of a different interpretation of the question asked in the form.

REPORT AND RECOMMENDATION RE
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

for these limitations. SSR 83-10 and 96-9p state that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 96-9p adds: "Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." (emphasis in original). Also, in *Widmark*, 454 F.3d at 1069-70, the Ninth Circuit remanded for further proceedings where an ALJ improperly rejected a physician's opinion that a claimant was limited in his ability to perform fine manipulation. Noting that an ALJ may rely on the Medical-Vocational Guidelines alone at step five only where they accurately and completely describe a claimant's abilities, and that most unskilled, sedentary jobs require good use of hands and fingers, the Court found that crediting the physician's opinion would have necessitated the conclusion that the claimant's ability to perform those jobs was limited and required the services of a vocational expert. *Id*. This issue, therefore, also implicates the ALJ's step five finding, as discussed further below.

While it may be arguable whether the assessed limitations should be deemed significant, the ALJ at the very least failed to adequately discuss this issue in addressing plaintiff's carpal tunnel syndrome, his assessment of the physicians' opinions as to manipulative limitations, and in his step four findings. Also, as reflected below, the ALJ should have called upon the services of a vocational expert at step five. For these reasons, this matter should be remanded for further administrative proceedings.

Rheumatoid Arthritis

Plaintiff also contests the ALJ's description of her rheumatoid arthritis as "controlled," asserting that he does not explain or point to evidence supporting this conclusion in the body of

01 the decision. Plaintiff asserts that she attested to continuing pain at the hearing (AR 325-26 02 (describing symptoms associated with her "[s]houlders, knees, lower back, elbows, wrists, 03 shoulders[]")), and notes that her treating rheumatologist, Dr. James Prickett, described "some 04 smoldering [rheumatoid arthritis] symptoms in her hands and right knee" on January 8, 2006. (AR 05 200-01.)

06 The Commissioner does not directly respond to this argument. He does, however, cite to 07 a note from Dr. Stickle – dated several days prior to Dr. Prickett's January 8, 2006 report – 08 stating that plaintiff was tolerating a medication Dr. Prickett had earlier prescribed and that the 09 hope was "to control her rheumatoid arthritis from further progression." (AR 282.)

10 It should be noted that the ALJ distinguished between plaintiff's knee arthritis and 11 rheumatoid arthritis, finding both severe, but describing the rheumatoid arthritis as controlled. 12 (AR 19.) The ALJ later reflected that the sedentary rating assessed by Drs. Virji and Dickson took 13 into account plaintiff's knee and hand arthritis. (AR 22.)

14 As discussed above, there is a question as to whether the ALJ's RFC findings adequately 15 accounted for any limitations associated with plaintiff's hands and fingers, as well as whether he 16 properly assessed physicians' opinions, including Dr. Quint's opinion as to manipulative limitations 17 stemming from arthritis in plaintiff's fingers. (AR 143.) Also, the ALJ did not discuss Dr. 18 Prickett's January 2006 note referencing smoldering rheumatoid arthritis symptoms. As such, on 19 remand, the ALJ should also address the issue of whether plaintiff's rheumatoid arthritis is 20 properly described as controlled.

21 <u>Step Five</u>

22 An ALJ may rely on the Medical-Vocational Guidelines ("guidelines" or "grid") to meet

REPORT AND RECOMMENDATION RE
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01 his burden at step five. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). "They may be

02 used, however, 'only when the grids accurately and completely describe the claimant's abilities and

03 limitations.'" *Id.* (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)). "When a

04 claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range

05 of work permitted by the claimant's exertional limitations, the grids are inapplicable[]" and the

06 testimony of a vocational expert is required. *Id.* (quoting *Desrosiers v. Secretary of Health &*

07 *Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)). *Accord Tackett v. Apfel*, 180 F.3d 1094,

08 1103-04 (9th Cir. 1999) ("Because Tackett's non-exertional limitations 'significantly limit the

09 range of work' he can perform, mechanical application of the grids was inappropriate.")

10 "[T]he fact that a non-exertional limitation is alleged does not automatically preclude

11 application of the grids. The ALJ should first determine if a claimant's non-exertional limitations

12 significantly limit the range of work permitted by his exertional limitations." *Desrosiers*, 846 F.2d

13 at 577 ("It is not necessary to permit a claimant to circumvent the guidelines simply by alleging

14 the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that

15 such impairment exists. To do so frustrates the purpose of the guidelines.") "Nonexertional

16 impairments may or may not significantly narrow the range of work a person can do." SSR 83-14.

17 *See also Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) ("The regulations do not,

18 however, preclude the use of the grids when a nonexertional limitation is alleged. They explicitly

19 provide for the evaluation of claimants asserting both exertional and nonexertional limitations. [20

20 C.F.R. Pt. 404, Subpt. P, App. 2] at § 200.00(e). The Appeals Council found that the claimed

21 nonexertional limitations did not so affect Razey's residual capacity that the use of the grids was

22 inappropriate. Both the Secretary's regulation and our decision in *Odle v. Heckler*, 707 F.2d 439,

REPORT AND RECOMMENDATION RE
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

440 (9th Cir. 1983), allow the use of the grids under these circumstances."), *modified* at 794 F.2d 1348 (1986).

In this case, upon finding plaintiff capable of performing sedentary work at all times from the date of alleged onset and at the light level after October 2005, the ALJ utilized the grids to find plaintiff disabled at step five. Acknowledging that plaintiff did not have the capacity to perform a full range of sedentary work, the ALJ stated: "The claimant's limitations on fingering nonetheless leave intact the capacity for handling; sedentary work does not by its nature involve working overhead." (AR 25.)

Plaintiff first takes issue with the ALJ's reliance on the grids in his finding as to sedentary work. She avers that it is unclear why the ALJ discussed limitations on fingering given that he did not find any such limitations, and that he failed to provide any support for his contention as to overhead reaching. Plaintiff further asserts that the ALJ's decision does not reflect consideration of the impact of her stooping limitation and her need to avoid cold environments. While conceding that a "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work[,]" SSR 96-9, plaintiff argues that the combination of stooping, overhead reaching, and cold environment limitations would have more than a slight impact on her ability to perform the full range of sedentary work.

Plaintiff also challenges the ALJ's reliance on the grids in his finding as to light work. She states that, in addition to stooping, overhead reaching, and cold environment limitations, the ALJ also found that, after October 2005, she could stand six out of eight hours in a day "with appropriate change of position[.]" (AR 22.) She avers that this latter limitation implies the need to change from sitting to standing, and that this precludes a finding that she could perform a full

REPORT AND RECOMMENDATION RE
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01 range of light work. *See* SSR 83-12 (stating that a person who must alternate periods of sitting

02 and standing "is not functionally capable of doing either the prolonged sitting contemplated in the

03 definition of sedentary work (and for the relatively few light jobs which are performed primarily

04 in a seated position) or the prolonged standing or walking contemplated for most light work.")

05       The Commissioner asserts that, while the ALJ did not adopt the inconsequential

06 manipulative limitations noted by various doctors, he acknowledged plaintiff had fingering

07 limitations in stating that they left plaintiff's handling ability intact. He avers that it is common

08 knowledge that sedentary work does not generally involve working overhead. The Commissioner

09 contends that the ALJ's assessment that plaintiff's non-exertional limitations were not significant

10 is supported by substantial evidence and that his reliance on the grids should be upheld.

11       The errors identified above – related to plaintiff's asserted handling and fingering

12 limitations – implicate the ALJ's step five decision. The ALJ does not resolve this issue by stating

13 that "[t]he claimant's limitations on fingering nonetheless leave intact the capacity for handling[.]"

14 (AR 25.) As noted by plaintiff, the ALJ did not find any limitations on fingering. Nor does the

15 ALJ adequately address the handling limitations assessed by the physicians discussed above. Also,

16 while sedentary work may not by its nature involve working overhead, the ALJ will have an

17 opportunity to support this contention on remand, with input from a vocational expert.

18 Additionally, the combination of possible handling and fingering limitations, along with limitations

19 on stooping, overhead reaching, cold environments, and a need to change position, provides

20 sufficient support for plaintiff's argument that her non-exertional limitations significantly limit the

21 range of work permitted by her exertional limitations.

22       Additionally, with respect to the change of position issue, the ALJ's decision would benefit

01 from clarification.  He describes plaintiff as capable of "walking and standing up to six hours in

02 an eight hour day, with appropriate change of position, sit for six hours in an eight hour day[.]"

03 (AR 22.)  It is not entirely clear what exertional activity the "appropriate change of position"

04 phrase applies to.  The ALJ should, therefore, take the opportunity to clarify this issue and any

05 impact on plaintiff's ability to perform sedentary and light work.  *See* SSR 83-12.

## CONCLUSION

For the reasons set forth above, this matter should be remanded for further administrative proceedings.

DATED this 18th day of July, 2008.

Mary Alice Theiler
United States Magistrate Judge